UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BRANDON GRIFFITH,

                    Plaintiff,

         - against -

SGT. MCNAMARA, *et al.*

                  Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
16-CV-6730 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

Plaintiff Brandon Griffith ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action against Sergeants McNamara ("McNamara") and O'Brien ("O'Brien") and Corrections Officers Lanning ("Lanning"), Santacroce ("Santacroce"), Appice ("Appice"), Celice ("Celice"), Armani ("Armani"), Piccolo ("Piccolo") and Cantore ("Cantore") (collectively, "Defendants"), alleging violations of his civil rights under 42 U.S.C. § 1983. (*See* Compl., Dkt. 1 ("Compl."), at ECF 5.)[1]  Currently before the Court is Defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's excessive force claim under the Eighth Amendment.[2]  For the reasons discussed below, Defendants' motion is denied.

---

[1] Plaintiff's allegations begin on page five of the Complaint.  Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] Plaintiff's Complaint alleges several other violations, including violations of Due Process and Equal Protection under the Fourteenth Amendment, as well as Eighth Amendment violations for failure to intervene and failure to deny medical treatment.  (*See* Compl. at ECF 5, ¶ 8.)  The Defendants' moving papers do not address these claims.  The Court therefore assumes that Defendants do not intend to move on those claims and that they will proceed to trial, along with Plaintiff's Eighth Amendment excessive force claim.

**BACKGROUND**

**I.      Relevant Facts[3]**

At the time this action was filed, Plaintiff was an inmate at the Nassau County Correctional

Facility (the "Correctional Facility").  (Defs.' Loc. Rule 56.1 Statement of Undisputed Material

Facts, Dkt. 153-2 ("Defs.' 56.1"), at ¶ 1.)  On November 22, 2013, at approximately 9:20 a.m.,

Plaintiff was ordered out of his cell for his appointment with mental health staff.  (Defs.' 56.1 ¶ 7;

*see also* Ex D–F to Defs.' Br., Dkts. 160-4 to 160-6 ("Use of Force Rpts.").)  There is considerable

disagreement between the parties as to what happened next.

Defendants' version of the events is as follows.  When Plaintiff left his cell, Defendant

Lanning commanded Plaintiff to stand with his back to the wall. (*Id.*)  Plaintiff allegedly ignored

that command and began approaching Lanning in an aggressive manner.  (*Id.*)  In response,

Lanning applied a one-second burst of oleoresin capsicum spray ("OC spray" or "pepper spray")

to Plaintiff's face. (*Id.*)  Defendant Appice—who had observed Plaintiff disobeying, kicking, and

punching Lanning—went over to assist, attempting to gain control of Plaintiff's arms.  (*Id.*)

Defendant Santecroce observed this altercation, ran over, and "took control" of Plaintiff's left side.

(*Id.* ¶ 9.)   After Plaintiff disobeyed multiple verbal commands to stop, Defendants Lanning,

---

[3] The facts below are taken from Defendants' Rule 56.1 statement, the parties' affidavits, and exhibits.  Unless otherwise noted, where Defendants' 56.1 statement is cited, the fact is undisputed or Plaintiff has pointed to no evidence in the record to contradict it.  Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document.  Though Plaintiff has submitted his own Rule 56.1 statement, it does not comply with the requirements of the local rule since it simply lays out a list of "disputed factual issues" with no corresponding references to Defendants' Rule 56.1 statement.  (Dkt. 143); *see* Loc. Civ. R. 56.1(b).  The Court notes, however, that "where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009).

2

Appice, and Santecroce took Plaintiff to the ground, and eventually restrained and handcuffed him. (*Id.* ¶¶ 8–9.)  Defendant Celis, who was present in the same cell block, observed Plaintiff's aggressive behavior, and heard the loud verbal commands by the officers, but did not physically assist with restraining Plaintiff.  (*Id.* ¶ 10.)  Defendant Cantore was not present for the incident. (*Id.* ¶ 11.)

Plaintiff disputes these facts.  According to Plaintiff, as he began making his way to his mental health appointment, Defendant Lanning said to him, "So you want to run your mouth to my officers, you stupid n*****," sprayed the OC spray into Plaintiff's eyes, and physically assaulted him.  (Pl.'s Opp'n Mot. Summary J., Dkt. 143 ("Pl.'s Opp'n"), ¶ 4.)  Plaintiff contends that Defendants Appice, Santacroce, Celice, and Cantore then joined Lanning in physically assaulting Plaintiff, and screamed racial slurs at him.  (*Id.*)  Throughout the alleged assault, Plaintiff states that he was in the fetal position.  (*Id.*)

Both parties agree that following the altercation, Defendant McNamara was dispatched to the scene and escorted Plaintiff to medical staff.  (Defs.' 56.1 ¶ 12.)  Though Plaintiff asserts that Defendants' actions caused him to suffer a fractured rib protruding from his side, (Pl.'s Opp'n at ECF 8), Defendants submit a medical evaluation of Plaintiff's X-rays from that day that do not show any rib fractures.  (Ex. I to Defs.' Br, Dkt. 160-9 ("Med. Evaluation"), at ECF 2.)[4]

Later that same day—November 22, 2013—Plaintiff was brought to the Behavior Modification Unit ("BMU").  (Defs.' 56.1 ¶ 14.)  Here, once again, the parties disagree as to what followed.

---

[4] The independent medical evaluation took place on September 30, 2022, where Dr. Dorothy Scarpinato both physically examined Plaintiff and reviewed the X-ray report of his left ribs, dated 11/22/13, concluding that there was "[n]o evidence of rib fractures."  (Med. Evaluation at ECF 2.)

First, Plaintiff makes allegations as to the use of force against him while in the medical unit.  Specifically, Plaintiff states that when he was first brought into the BMU, Defendant McNamara, joined by several other prison guards who are not parties in this action, slammed Plaintiff "face first into the ground while [he] was in full 4pt. restraints . . . instead of follow[ing] mandated procedures for decontamination." (Pl.'s Opp'n ¶ 5.) Plaintiff further alleges that he was transferred into a restraint chair and provided no medical attention.[5] (*Id.*)

Second, Plaintiff alleges that he was placed in a BMU holding cell without bedding, and that when Plaintiff requested bedding, Defendants Armani and Piccolo[6] ignored him.  (Pl.'s Opp'n ¶ 7.)  Plaintiff claims that he said to Armani and Piccolo, "fuck you pig," and in response, "sprayed the whole can of [OC spray] all over [his] face, body, and genitals." (*Id.*)  Plaintiff further asserts that, following this incident, Defendant O'Brien transferred Plaintiff to a smaller holding cell with no medical treatment for more than an hour, called him derogatory names, and disposed of "all of" Plaintiff's property.  (Pl.'s Opp'n ¶¶ 10–11.)  Disputing these facts, Defendants assert that, while in the holding cell, Plaintiff started to spit on Piccolo and Armani.  (Defs.' 56.1 ¶ 14.) Since both officers were in the middle of preparing another inmate for a visit, who was only

---

[5] These are new allegations, introduced for the first time in Plaintiff's opposition brief. Ordinarily, "a plaintiff, even when proceeding *pro se*, may not raise new allegations for the first time in opposition to summary judgment." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 628 n.5 (E.D.N.Y. 2021) (citing *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) ("The district court did not err in disregarding allegations [*pro se* plaintiff] raised for the first time in response to [defendant]'s summary judgment motion.")).  But here, the Court's review of the record evidence corroborates at least the claim that Plaintiff "was subjected to a second Use of Force in the Facility Medical Unit and had to be placed in the restraint chair . . . to facilitate decontamination and examination." (Ex. G to Defs.' Br., Dkt. 160-7, at ECF 2.)  For this reason, the Court will consider these facts as part of the summary judgment analysis.

[6] In the Complaint, Plaintiff names Defendant Armani as being involved in this incident, (Compl. at ECF 5 ¶ 4), but his opposition papers name Defendant Piccolo instead, (Pl's Opp'n ¶ 7).  The Court's survey of the record evidence indicates that both Armani and Piccolo were present for the incident.  (Ex. H to Defs.' Br., Dkt. 160-8, at ECF 1.)

partially restrained, Armani applied OC spray to Plaintiff's face to subdue him.  (*Id.* ¶ 14.)  Further,

O'Brien "secured" Plaintiff after the incident.  (Defs.' 56.1 ¶ 14.)

Separate from the incidents on November 22, 2013, Plaintiff further alleges that between

November 22 and December 8, 2013, Defendants Armani, Piccolo, and O'Brien starved Plaintiff,

threw buckets of water on him, and called him derogatory names.  (Pl.'s Opp'n ¶¶ 12–14.)  Once

again, Defendants dispute these allegations.

## II.      Procedural History

Plaintiff filed his Complaint on November 28, 2016, which remains the operative

complaint in this action.[7]  (*See* Compl.)  On March 1, 2017, Defendants moved to dismiss the

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 15.)  The Court denied

Defendants' motion to dismiss on June 29, 2017.  (Dkt. 24.)

Following the order denying the dismissal motion, Plaintiff failed to appear in at least six

status conferences over the course of three years, resulting in a warning from the Court that this

action may be dismissed for failure to prosecute.[8]  (*See* 8/21/2018, 1/4/2021, 1/12/2021, 3/22/2021,

4/22/2021, & 7/20/2021 Min. Entries.)  At the next status conference, on November 17, 2021, both

parties appeared, and discovery formally began.  (*See* 11/17/2021 Min. Entry.)    Plaintiff

subsequently failed to appear for four more status conferences.  (*See* 9/12/2022, 10/11/2022,

11/7/2022, & 11/29/2022 Min. Entries.)  Finally, at the status conference held on December 7,

---

[7] Though Plaintiff filed an Amended Complaint on April 5, 2019, (Dkt. 59), it was deemed deficient due to lack of an original signature, (Dkt. 60).  On May 13, 2019, Plaintiff filed a motion to amend his Complaint a second time, but the Court denied his motion.  (Dkt. 83.)

[8] Notably, both Plaintiff and Defendants failed to appear at the status conference held on July 20, 2021.  (*See* 3/22/2021 Min. Entry.)

2022, it was reported that Plaintiff's independent medical examination had been completed, and discovery was formally closed.  (*See* 12/7/2022 Min. Entry.)

On January 13, 2023, Defendants requested a pre-motion conference regarding their anticipated motion for summary judgment.  (Dkt. 136.)  Plaintiff did not respond.  The Court twice *sua sponte* extended the deadline for Plaintiff to respond to Defendants' request for a pre-motion conference.  (*See* 2/15/2023 & 3/6/2023 Min. Entries.)  On April 6, 2023, Plaintiff filed his opposition to this motion.  (Dkt. 143.)[9]  A pre-motion conference was held on May 5, 2023, following which Defendants filed their motion papers on November 9, 2023.[10]  (Dkt. 153.) Plaintiff filed a supplemental response letter on June 21, 2024.  (Dkt. 159.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

---

[9] Plaintiff submitted his opposition brief and Rule 56.1 statement in response to Defendants' pre-motion conference letter, presumably under the mistaken belief that Defendants had already moved for summary judgment. (Dkt. 143.) District courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).  Given Plaintiff's *pro se* status, the Court exercises its discretion to treat those submissions as Plaintiff's opposition papers.

[10] When filing their moving papers, Defendants failed to attach any of the exhibits referenced in those papers.  Following a docket order, Defendants filed their exhibits on August 28, 2024.  (Dkt. 160.)

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (per curiam). Once this burden is met, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court construes any disputed facts in the light most favorable to Plaintiff for purposes of Defendants' summary judgment motion. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citations and quotations omitted). Nevertheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (citation omitted).

## DISCUSSION

As a preliminary matter, the Court notes that the record evidence in this case is thin, consisting only of four incident reports filled out by Defendants Lanning, Appice, Santacroce, and Armani respectively; one investigating supervisor report filled out by Defendant McNamara, and one independent orthopedic examination conducted by Dr. Dorothy Scarpinato on September 30, 2022, during which she physically examined Plaintiff and inspected Plaintiff's X-rays dated November 22, 2013.

In moving for summary judgment, Defendants make two arguments. First, Defendants contend that Plaintiff's excessive force claim must be dismissed because Plaintiff fails to allege actual injuries. Second, Defendants argue that Defendants Celis, Cantore, and McNamara should be dismissed because they had no personal involvement in any of the alleged incidents of excessive force involved in this action. The Court considers each of Defendants' arguments in turn.

## I.      Excessive Force Claim

"[W]here an individual has been convicted of a crime and seeks to challenge the conditions of confinement, including a claim of excessive force, the claim is analyzed as a violation of the Eighth Amendment's prohibition on 'cruel and unusual punishment.'" *Turner v. White*, 443 F. Supp. 2d 288, 293 (E.D.N.Y. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Under an Eighth Amendment analysis, the plaintiff must establish both a subjective and objective test. *Id.* To meet the objective element, the plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," and "[t]o meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence, . . . [that is,] the prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

A plaintiff "need not prove 'significant injury to make out an excessive force claim,' *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999), but "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). The core judicial inquiry is not the extent of the injury sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

Here, the only medical evidence following the alleged injury indicated no fractured rib, contrary to what Plaintiff originally claimed, and no evidence of pneumothorax pulmonary

contusion or pleural effusion.  (Med. Evaluation at ECF 2.)  Nonetheless, construing all factual

disputes in Plaintiff's favor, as the Court must do, there is still a question of material fact as to

whether the force used by Defendants was unrelated to any effort at maintaining order or discipline.

*See Miller v. Nassau County*, No. 13-CV-6813 (SJF) (ARL), 2015 WL 13745261, at \*11

(E.D.N.Y. Oct. 22, 2015) (denying summary judgment on excessive force claim notwithstanding

scant evidence of Plaintiff's injuries), *R. & R. adopted*, 2015 WL 8055302 (E.D.N.Y. Dec. 7,

2015); *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (noting that although a prisoner's

evidence of an Eighth Amendment violation was "thin" and the "medical records after

the . . . incident with [that officer] indicated only a slight injury," a triable issue of fact still

existed).  Plaintiff maintains that the use of force against him was unprovoked and violent.  (Pl.'s

Opp'n ¶¶ 4 (claiming that Defendants Lanning, Appice, Santacroce, Celice, and Cantore

physically assaulted him while he was in a fetal position).)  Absent any additional evidence, the

Court finds that "Plaintiff's excessive force [claim] against [Defendants] will turn on issues of

credibility that cannot be determined on a motion for summary judgment."  *Miller*, 2015

WL 13745261, at \*11.

## II.     Defendants' Personal Involvement Arguments

"It is well settled in this circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to a section 1983 claim."  *Delee v. Hannigan*, 729 F.

App'x 25, 31 (2d Cir. 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  The

Second Circuit has held that "personal involvement" for purposes of a Section 1983 action means

"direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a

policy or custom under which unconstitutional practices occurred, or gross negligence in managing

subordinates."  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Defendants Celis, Cantore, and McNamara seek dismissal because they allegedly had no personal involvement in any of the "excessive force" incidents in this action. Specifically, Defendants argue that Celis and Cantore were not present for the alleged assault incident on November 22, 2013, and that McNamara's "only interaction with the Plaintiff was to escort him to the medical facility." (Defs.' Br. at 7.)

But Plaintiff's Complaint alleges that Defendants Celice and Cantore joined Defendant Lanning in physically assaulting him on November 22, 2013. (Compl. at ECF 5, ¶ 2.) Plaintiff further alleges that when he was first brought into the BMU, Defendant McNamara was one of the prison officials who slammed Plaintiff "face first into the ground while [he] was in full 4pt. restraints." (Pl.'s Opp ¶ 5.) Once again, absent any additional evidence and construing all disputed facts in the light most favorable to Plaintiff, there is a genuine issue of fact as to whether McNamara, Celis, and Cantore were personally involved in the alleged use of excessive force against Plaintiff. This question is ultimately one of credibility and cannot be resolved as a matter of law.[11]

## CONCLUSION

For the reasons described above, there remain genuine issues of material fact as to Plaintiff's Section 1983 claim. Defendants' Motion for Summary Judgment is denied in its

---

[11] The Court also finds that because Plaintiff's other claims, alleging due process violations, failure to intervene, and failure to deny medical treatment, all based on the same alleged excessive force, are proceeding to trial, (*see supra* note 2), there is also a prudential reason to deny Defendants' motion to dismiss as to his excessive force claim. *See Bacchus v. N.Y.C. Dept. of Educ.*, 137 F.Supp.3d 214, 241 (E.D.N.Y. 2015) (finding that where other claims in the case are "going forward based on the same evidence as is being relied upon for the challenged claim, the better course is not to dismiss the challenged claim") (citing *Thibodeaux v. Travco Ins. Co.*, No. 13–CV–5599 (ERK) (WP), 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014) ("If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted.")).

entirety.  The Parties will file their respective portions of the Joint Pretrial Order required by the

Court's Individual Rules by November 9, 2024.

SO ORDERED.


/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  September 9, 2024
       Brooklyn, New York

11